DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

HASAN ABDEL-RAHMAN, MALEA KIBLAN       )
RAHMAN, ABDUL SAMAD, FOAD SAMAD, AYMAN )
ABDEL-SAMAD, and FALAHEEN ENTERPRISES, )
INC.,                                  )
                                       )         Civil No. 2013-102
           Plaintiffs,                 )
                                       )
        v.                             )
                                       )
HASSAN ABDALLAH, AHMAN ABDALLAH,       )
DOCKSIDE CONVENIENCE LLC, and GIANT    )
MARKET LLC,                            )
                                       )
           Defendants.                 )
_____)

ATTORNEYS:

**Scot F. McChain, Esq.**
McChain Nissman Law Group
St. Croix, VI
      *For the Plaintiffs* ,

**Mark Wilczynski, Esq.**
Law Office of Wilczynski & Garten, P.C.
St. Thomas, VI
      *For the defendants.*


**MEMORANDUM OPINION AND ORDER**

**GÓMEZ, J.**

      Before the Court is the motion of the defendants Hassan
Abdallah, Ahman Abdallah, Dockside Convenience LLC, and Giant
Market LLC ("Giant Market") to dismiss Counts One and Two of the
Complaint filed by plaintiffs Hasan Abdel-Rahman, Malea Kiblan
Rahman, Abdul Samad, Foad Samad, Ayman Abdel-Samad, and Falaheen

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 2

Enterprises, Inc. pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants also ask that the entire matter be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for falling outside the subject-matter jurisdiction of this Court.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2009, Mohannad Abdel-Samad and Jad Shalhout, acting on behalf of Falaheen Enterprises, Inc. ("Falaheen") entered into a lease with Plessen, Inc. to lease property described as No. 9 & 6 Estate Thomas, St. Thomas, U.S. Virgin Islands (the "Property"). The lease was multi-part, and called for a gas station and convenience store to be built on the Property. The gas station was to be open by June 2009, and the convenience store was to be constructed by 2013.

Thereafter, Falaheen entered into agreements with Caribbean Petroleum, Inc. to purchase equipment and other property necessary to construct a gas station on the Property, as well as an agreement to purchase fuel (the "fuel purchase agreement"). A gas station owned by Falaheen opened on the Property on June 16, 2009, under the name "Giant Gas." Mohannad Abdel-Samad and Jad Shalhout transferred their shares in Falaheen to Ayman Abdel-Samad and Hasan Abdel-Rahman.

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 3

Falaheen's owners were unable to agree on the specifics of building a convenience store on the property. Falaheen pursued the option of having another party develop the convenience store with the intended result of eventually combining Giant Gas and the convenience store into a single operation.

Thereafter, Dockside, LLC ("Dockside") was organized. Hasan Abdel-Rahman owned a 50% interest in Dockside, Foad Samad owned a 25% interest, and Hassan Abdallah owned a 25% interest. Hassan Abdallah agreed to oversee the construction of the convenience store for all parties with size, cost, and all other components to be reviewed and agreed to by all members of Dockside and Falaheen.

On June 1, 2010, Hasan Abdel-Rahman and Hassan Abdallah executed a second lease with Plessen, Inc. for the Property. The second lease changed the leaseholder from Falaheen to Dockside. In the second lease, Hasan Abdel-Rahman and Hassan Abdallah made personal guarantees to pay the full amount of the lease in the event of default.

In June, 2010, Caribbean Petroleum sued Falaheen and Abdul Samad, one of Falaheen's members, for failure to perform under the fuel purchase agreement (the "fuel purchase litigation"). While the fuel purchase litigation was ongoing, Hassan Abdallah loaned funds to Falaheen to help with litigation costs, fuel

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 4

costs, and rent on the Property. The total amount of Hassan
Abdallah's financial assistance was $125,000. It was agreed that
any money loaned to Falaheen from Hassan Abdallah would be
repaid.

Hassan Abdallah purchased 10% ownership of Falaheen by
buying 10 shares at $10,000 per share.

Falaheen granted Hassan Abdallah's brother, Ahmad Abdallah,
the authority to manage Giant Gas on June 16, 2010. Once Ahmad
Abdallah assumed management of Giant Gas, Falaheen did not
control Giant Gas's finances or day-to-day operations. Hassan
Abdallah, Ahmad Abdallah, and their father Subhi Abdallah, were
the only individuals involved in the day-to-day operations of
Giant Gas, and had sole control over its bank accounts,
purchases, expenses, and accounting. Falaheen alleges it made
repeated requests for financial records that were unanswered
during 2010, 2011, and 2012.

Designing, planning, and construction of the convenience
store was ongoing during 2010 and 2011. Falaheen alleges that
Hassan Abdallah did not include Falaheen's other members in the
designing or planning of the convenience store.

In February of 2011, Falaheen and Dockside discussed
merger. They drafted a tentative proposal for merger that was
conditional upon certain terms. That month, Foad Samad, Hasan

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 5

Abdel-Rahman, and Hassan Abdallah executed an agreement redistributing the membership interest of Dockside. That agreement granted Hassan Abdallah a 51% interest, Hasan Abdel-Rahman a 39% interest, and Foad Samad a 10% interest. The plaintiffs allege this agreement was based on promises made by Hassan Abdallah to Hasan Abdel-Rahman and Foad Samad.

While a potential merger was being discussed, and before any merger could occur, Falaheen and its members advised Hassan Abdallah, Ahman Abdallah, Dockside, and Giant Market not to comingle the business accounts for Giant Gas and the convenience store. Rosh Alger, then Falaheen's attorney, communicated with the parties that prior to merger, accounting for the sales of gas and other products should be segregated.

In September, 2012, the convenience store on the Property opened for business. Thereafter, Hasan Abdel-Rahman, Malea Kiblan Rahman, Abdul Samad, Foad Samad, Ayman Abdel-Samad, and Falaheen allege, Hassan Abdallah, Ahman Abdallah, Dockside, and Giant Market began to comingle funds between the convenience store and the Giant Gas.

The fuel purchase litigation was settled out of court in October 2012, on the advice of Alger. Alger notified the parties. Alger then requested submission of all receipts documenting the investment so that membership interests in the

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 6

proposed, merged corporation could be distributed. Thereafter,
Hassan Abdallah emailed Falaheen and its membership suggesting
the terms of a merger between Dockside and Falaheen, including a
final distribution of shares.  According to the proposed
distribution: Hassan Abdallah would receive a 69.99% interest in
the new corporation, Hasan Abdel-Rahman would receive 8.34%,
Hussein Abdel-Samad (another member of Falaheen) would receive a
10% interest, Abdul Samad would receive 6.67%, and Ayman Abdel-
Samad would receive a 5% interest. Alger informed Falaheen and
its members that the merger would occur whether they agreed to
the proposed terms or not.

On January 4, 2013, Hasan Abdel-Rahman, Foad Samad, Ayman
Abdel-Samad, and Abdul Samad replaced Alger with a new attorney,
Robert Eberhart ("Eberhart") to represent them. Eberhart
requested copies of accounts and financial statements related to
Falaheen and Dockside from Alger. Alger replied that the merger
had already taken place, and that he intended to file the
appropriate paperwork.

In February 2013, Hassan Rahman, president of Falaheen,
contacted Mohanned Abdel-Samad three times and directed Mohanned
Abdel-Samad to take control of Giant Gas's accounts, cash, bank
accounts, and gas station business and separate them from the

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 7

convenience store's accounts. Mohanned Abdel-Samad stated that would be almost impossible.

Thereafter, on March 15, 2013, Hassan Abdallah filed Articles of Merger for Dockside Convenience, LLC ("Dockside Convenience"), the company purportedly formed when Falaheen and Dockside merged.

Falaheen, Hasan Abdel-Rahman, Malea Kiblan Rahman, Abdul Samad, Foad Samad, and Ayman Abdel-Samad (collectively the "Falaheen Group") filed the Complaint in this matter on October 29, 2013. In that Complaint, the Falaheen Group alleges that Hassan Abdallah, Ahman Abdallah, Dockside, and Giant Market (collectively the "Dockside Group") unlawfully "took over" Giant Gas.

The Complaint contains eleven counts.[1] Count One alleges federal securities fraud by the Dockside Group. Count Two alleges violations of the federal Racketeer Influenced Corrupt Organizations Act ("RICO") and the Virgin Islands Criminally Corrupt Influenced Organizations Act by the Dockside Group. Count Three alleges that the Dockside Group violated the Virgin Islands Uniform Securities Act. Count Four alleges misrepresentation and fraud by Hassan Abdallah. Count Five

---

[1] The counts are listed as "A, B, C" etc. in the Complaint. For clarity, the Court has labeled Count A as Count One, Count B as Count Two, and so forth.

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 8

alleges misrepresentation and fraud by Ahmad Abdallah. Count Six
alleges a breach of fiduciary duty by Hassan Abdallah.  Count
Seven alleges breach of fiduciary duty by Ahmad Abdallah.
Finally, Count Eight alleges unjust enrichment by Hassan
Abdallah. Counts Nine and Ten seek piercing of the corporate
veil of Dockside and Giant Market.  Count Eleven alleges civil
conspiracy by Hassan Abdallah and Ahmad Abdallah.

The Dockside Group filed a motion to dismiss the Complaint
for failure to state a claim on December 30, 2013. Specifically,
the Dockside Group argues that neither the federal securities
fraud count nor the civil RICO count state a claim on which
relief can be granted. The Dockside Group further argues that,
if the Court dismisses those counts of the Complaint, the
Complaint must be dismissed in its entirety as outside of the
subject-matter jurisdiction of this Court. The Falaheen Group
opposes the motion to dismiss.

## II. DISCUSSION

### A. Motion to Dismiss for Failure to State a Claim

When reviewing a motion to dismiss brought pursuant to
Federal Rule of Civil Procedure 12(b)(6), the Court construes
the complaint "in the light most favorable to the plaintiff." *In
re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir.
2010). The Court must accept as true all of the factual

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 9

allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004).

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "'merely consistent with' a defendant's liability, . . . 'stops

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 10

short of the line between possibility and plausibility of

"entitlement of relief."'" *Id.* (citing *Twombly*, 550 U.S. at

557).

　　To determine the sufficiency of a complaint under the

plausibility standard, the Court must take the following three

steps[2]:

> First, the court must "tak[e] note of the
> elements a plaintiff must plead to state a
> claim." Second, the court should identify
> allegations that, "because they are no more
> than conclusions, are not entitled to the
> assumption of truth." Finally, "where there
> are well-pleaded factual allegations, a
> court should assume their veracity and then
> determine whether they plausibly give rise
> to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 674, 679).

## B. Motion to Dismiss for Lack of Subject-Matter Jurisdiction

　　Federal Rule of Civil Procedure 12(b)(1) governs motions to

dismiss for lack of subject-matter jurisdiction.  A Rule

12(b)(1) motion may be treated either as a facial or a factual

challenge to the court's subject-matter jurisdiction. *Gould*

*Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). A

---

　　[2] *Iqbal* describes the process as a "two-pronged approach" but the
Supreme Court took note of the elements a plaintiff must plead to state a
claim before proceeding to its two-step approach. Accordingly, the Third
Circuit has deemed the process a three step approach. *See Santiago*, 629 F.3d
at 130.

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 11

factual challenge may occur only after the allegations of the complaint have been controverted. *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 892 n. 17 (3d Cir. 1977).  In considering a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), all material allegations in the complaint are taken as true. *Id.* at 891-92; *see also Taliaferro v. Darby Township. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (summarizing the standard for facial attacks under Rule 12(b)(1) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court").

## III. ANALYSIS

### A. Count One: Federal Securities Fraud

The Dockside Group argues in its motion that the Falaheen Group has failed to state a claim under Section 10b of the Federal Securities Exchange Act of 1934, 15 U.S.C. § 78j, in the Complaint. In Count One, the Falaheen Group asserts that the Dockside Group has committed securities fraud. The Dockside Group argues that the Falaheen Group has failed to meet the heightened pleading requirements applied to such claims under federal securities law. As such, Dockside Group argues, Count One should be dismissed.

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 12

Section 10(b) of the Securities Exchange Act of 1934
prohibits the use of a manipulative or deceptive device or
contrivance in connection with the purchase or sale of any
security. *See* 15 U.S.C. § 78j(b)("Section 10(b)").  In Count
One, the Falaheen Group alleges that the Dockside Group obscured
financial information about Giant Gas's profits and the Dockside
Group members' investment sources, and that the Dockside Group
made false promises regarding how the business would be run
prior to any potential merger.  The Falaheen Group alleges that
these omissions and misstatements were misleading and resulted
in the Falaheen Group's purchase, sale, and redistribution of
shares.  Section 10(b) in pertinent part provides that "[i]t
shall be unlawful for any person . . .to use or employ, in
connection with the purchase or sale of any security . . .any
manipulative or deceptive device or contrivance in contravention
of such rules and regulations as the [Securities and Exchange]
commission ["SEC"] may prescribe. . . ." 15 U.S.C. § 78j. The
relevant regulation promulgated by the SEC provides that "[i]t
shall be unlawful for any person . . . to make any untrue
statement of a material fact or to omit to state a material fact
necessary in order to make the statements made . . . not
misleading . . . in connection with the purchase or sale of any
security." 17 C.F.R. § 240.10b-5. Clearly, the conduct alleged

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 13

in Count One is contemplated by Section 10(b). As such, the

Court is tasked with determining what, if any, pleading

requirements are attached to such claims.

The United States Court of Appeals for the Third Circuit

has addressed the pleading requirement for security cases. In

*Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d

Cir. 2009), that Court instructed:

> Faced with a Rule 12(b)(6) motion to dismiss a §
> 10(b) action, courts must, as with any motion to
> dismiss for failure to plead a claim on which
> relief can be granted, accept all factual
> allegations in the complaint as true. As is also
> true generally, courts must consider the
> complaint in its entirety, as well as documents
> incorporated into the complaint by reference,
> and matters of which a court may take judicial
> notice. Because this is a securities fraud case,
> however, we do not merely ask, as we normally
> would under Rule 12(b)(6), whether, under any
> reasonable reading of the complaint, the
> plaintiff may be entitled to relief. Instead,
> Shareholders must satisfy the heightened
> pleading rules codified in the [Private
> Securities Litigation Reform Act ("PSLRA")].
>
> The PSLRA provides two distinct pleading
> requirements, both of which must be met in order
> for a complaint to survive a motion to dismiss.
> First, under 15 U.S.C. § 78u-4(b)(1), the
> complaint must specify each allegedly misleading
> statement, why the statement was misleading,
> and, if an allegation is made on information
> and belief, all facts supporting that belief
> with particularity. Second, the complaint must,
> with respect to each act or omission alleged to
> violate this chapter, state with particularity
> facts giving rise to a strong inference that the
> defendant acted with the required state of mind.

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 14

     Significantly, both provisions require facts to be pleaded with particularity. As we have explained, this particularity language echoes precisely Fed. R. Civ. P. 9(b). Indeed, although the PSLRA replaced Rule 9(b) as the pleading standard governing private securities class actions, Rule 9(b)'s particularity requirement is comparable to and effectively subsumed by the requirements of . . . the PSLRA. This standard requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story. Section 78u-4(b)(1) adds an additional requirement where an allegation regarding a defendant's statement or omission is made on information and belief. In those circumstances, plaintiffs must also state with particularity all facts on which that belief is formed. That is, when allegations are made on information and belief, the complaint must not only state the allegations with factual particularity, but must also describe the sources of information with particularity, providing the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey.

     The PSLRA's requirement for pleading scienter, on the other hand, marks a sharp break with Rule 9(b). Under § 78u-4(b)(2), a plaintiff can no longer plead the requisite scienter element generally, as he previously could under Rule 9(b). Instead, under the PSLRA's exacting pleading standard for scienter, any private securities complaint alleging that the defendant made a false or misleading statement must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

*Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 252-53 (3d Cir. 2009)(internal citations and quotations omitted).

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 15

To state a claim under section 10(b) and Rule 10b-5, a plaintiff must plead with the discussed particularity the following elements: (1) that a defendant made a material misrepresentation or omission; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which the plaintiff relied; and (5) plaintiff's reliance was the proximate cause of plaintiff's injury. *In re Supreme Specialties, Inc. Securities Litigation*, 438 F.3d 256, 275 (3d Cir. 2006); *Gigliotti v. Mathys*, 129 F. Supp. 2d 817, 820 (D.V.I. 2001).

"The courts have implied from these statutes and Rule a private damages action, which resembles, but is not identical to, common-law tort actions for deceit and misrepresentation." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). A misrepresentation, in the context of the common-law tort actions for deceit and misrepresentation, is "not only words spoken or written, but also any other conduct that amounts to an assertion not in accordance with the truth." Restatement (Second) of Torts § 525, comment b.

In order to determine whether the Falaheen Group has stated a claim for federal securities fraud, the Court must first determine which representations or omissions are alleged to have been material misrepresentations or material omissions. *See id.*

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 16

A plaintiff must "specify each allegedly misleading statement, the reason or reasons why the statement is misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Avaya*, 564 F.3d at 259.

In their Complaint, the Falaheen Group claims that the following were misrepresentations or material omissions: (1) the Dockside Group's failure to provide the Falaheen Group with complete financial statements that fully reflect the profits made by Giant Gas between June, 2010, and December, 2012; (2) Hassan Abdallah's promise to manage Giant Gas in good faith and "his purported investment that, upon information and belief, was primarily based on Falaheen's own profits from Giant Gas;" (3) co-mingling of funds between Giant Gas and the convenience store despite instructions from the Falaheen Group and Alger not to co-mingle the accounts prior to merger; (4) the defendants' "misstatements and omissions regarding the true source of their purported investments in the convenience store;" and (5) the statement contained within the articles of merger that a plan of merger had been approved on or about February 23, 2011.

Each alleged misrepresentation or material omission will be considered independently for purposes of determining whether it is identified with sufficient specificity under the PSLRA.

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 17

The Court first considers the allegation that the Dockside Group made a material omission of fact in failing to provide the Falaheen Group with complete financial statements that fully reflect the profits made by Giant Gas between June, 2010, and December, 2012. An omission may constitute sufficient grounds for a securities fraud action where the defendant "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1)(B). An omitted fact is material where there is substantial likelihood that a reasonable shareholder would consider it important in making decisions. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 439 (1976).

Though the Falaheen Group alleges that it was a material omission to fail to disclose complete financial statements for June 2010 through December 2012, they have not identified a statement or representation made by any defendant that was misleading in light of the alleged omission. "[I]t bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 18

(2011)(internal quotations omitted). As the Falaheen Group has
not identified an actual representation that, in light of all of
the circumstances, was misleading, or such a statement's time,
place, or speaker, this alleged omission falls short of the
pleading requirements of the PSLRA. *See Avaya*, 564 F.3d at, 253
(stating that the PSLRA and Rule 9 "require[] a plaintiff to
specify the statements contended to be fraudulent, identify the
speaker, state when and where the statements were made, and
explain why the statements were fraudulent.")

The Falaheen Group next asserts that they were misled by
"Hassan Abdallah's promise [to act in good faith on behalf of
all members] and on his purported investment that, upon
information and belief, was primarily based on Falaheen's own
profits from Giant Gas[.]" The Falaheen Group fails to specify a
representation regarding Hassan Abdallah's investment which was
misleading. There is nothing contained within the Complaint
which suggests any affirmative representation was made or the
content of such a statement regarding Hassan Abdallah's
investment in the convenience store.

The Falaheen Group does identify Hassan Abdallah's
purported promises to "prudently and fairly manage the
Convenience Store, to act in good faith on behalf of the other
members, and not to engage in self dealing." The Complaint

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 19

states that such promises were made prior to February, 2011, but
do not otherwise indicate the date of such statements.   There is
nothing in the Complaint as to where the statements were made or
how the statements were made.   This is not the specificity
required under the PSLRA. The high standard for pleading set by
the PSLRA "requires plaintiffs to plead the who, what, when,
where and how" of all alleged misstatements. *Avaya*, 564 F.3d at
253. Though the "who" and "what" are known in this instance, the
"when, where, and how" are not. As such, these alleged
misstatements cannot support a securities fraud claim.

The Falaheen Gruop next alleges that the Dockside Group
omitted a material fact or made a misrepresentation by co-
mingling funds between Giant Gas and the convenience store. The
Falaheen Group has not identified any representation that was
made misleading by omission of this alleged fact. "Disclosure is
required under these provisions only when necessary to make
statements made, in the light of the circumstances under which
they were made, not misleading." *Matrixx Initiatives*, 131 S. Ct.
t, 1321 (2011)(internal quotations omitted). Because no
statement has been identified here, the mere alleged co-mingling
of funds cannot meet the pleading standard of the PSLRA.

The Falaheen Group next alleges that the Dockside Group
made "misstatements and omissions regarding the true source of

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 20

their purported investments in the convenience store

construction and operations." The only such "omission" or

"misstatement" identified in the Complaint is the Dockside

Group's failure to provide the Falaheen Group with financial

statements.  No statement is alleged to have been made by any

member of the Dockside Group which was made misleading by this

omission. As such, this allegation too is insufficient to

properly state a claim for securities fraud. *See Matrixx*

*Initiatives*, 131 S. Ct. t, 1321 ("Disclosure is required under

these provisions only when necessary to make statements made, in

the light of the circumstances under which they were made, not

misleading.")

Finally, in the Complaint, the Falaheen Group alleges that

the Dockside Group made misstatements within the articles of

merger filed on March 15, 2013. The Falaheen Group alleges that

the Dockside Group stated that a plan of merger had been

approved on February 23, 2011, and that such statement was false

as the February 23, 2011, plan of merger was conditioned upon

certain preconditions. Hassan Abdallah is identified as the

defendant who filed the articles of merger with the Lieutenant

Governor's Office of Corporations and Trademarks. The Falaheen

Group has thus identified the who (Hassan Abdallah), what

(statement regarding merger), when (March 15, 2013), where

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 21

(Lieutenant Governor's office), and how (writing containing the articles of merger). *See Avaya*, 564 F.3d at 253.

As the first element, the identification of a misstatement, has been met, the Court next must consider if the statement was made with scienter. *See Gigliotti*, 129 F. Supp. 2d at 820. "To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." *Matrixx Initiatives*, 131 S. Ct. at 1323. "[A]ny private securities complaint alleging that the defendant made a false or misleading statement must state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Avaya*, 564 F.3d at 253 (emphasis added). "[T]he second requirement of the PSLRA—that the plaintiff plead with particularity facts giving rise to a strong inference of scienter—obliges courts to weigh the plausible nonculpable explanations for the defendant's conduct against the inferences favoring the plaintiff." *Id.* at 267. "A strong inference of scienter is one that is cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.*

The pattern of conduct here, and the ongoing disagreements as to the rights and responsibilities of the parties to this

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 22

case could give rise to the inference that Hassan Abdallah knew
the statements contained within the articles of merger were
incorrect when he filed the articles. The Falaheen Group had
instructed Mohanned Abdel-Samad to take control of Giant Gas's
accounts, cash, bank accounts, and gas station business and
separate them from the convenience store's accounts no less than
three times. From this, one could infer that Hassan Abdallah
(who was the manager of Giant Gas) was aware that there was some
dispute as to whether Falaheen and Dockside really were merged.
The Falaheen Group had also asked for complete financial
statements. Dockside did not provide such statements to Falaheen
or its membership. This pattern of refusal to provide
information could indicate that the Dockside Group intended to
deceive or manipulate the Falaheen Group.

On the other hand, there is an inference that Abdallah did
not know the articles of merger contained a misstatement when
they were filed, as well. Indeed, in its Complaint, the Falaheen
Group states that the attorney who coordinated the alleged
merger, Alger, stated multiple times that merger had occurred.
It is possible Abdallah relied on his attorney's representation
that the statements contained within the articles of merger were
true. A close reading of the Complaint indicates there is a
disagreement as to whether the conditions for merger set out in

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 23

the proposal for merger were met. It is possible that Abdallah

believed all preconditions for the merger of Falaheen and

Dockside had occurred.

The Court is obliged to "weigh the plausible nonculpable

explanations for the defendant's conduct against the inferences

favoring the plaintiff." *Id.* at 267. Here, the Court is not

convinced that the inferences of scienter here are "at least as

compelling as any opposing inference of nonfraudulent intent."

*Id.* Given that the Court has not been presented with anything

that Dockside Group stood to gain by making misstatements to the

Falaheen Group at that point, it seems more plausible that

Abdallah took the advice of his attorney and, on his belief the

conditions had been satisfied, filed the articles of merger.

As the Falaheen Group has failed to specifically plead any

misstatement or material omission which meets all of the

requirements for pleading under the PSLRA, the securities fraud

claim cannot stand.

**B. Count Two: Federal Racketeer Influenced Corrupt Organizations**
   **Act ("RICO")**

In Count Two, the Falaheen Group alleges that the Dockside

Group has violated the Racketeer Influenced Corrupt

Organizations Act ("RICO").  The Dockside Group argues that the

Falaheen Group has failed to state a claim under RICO.  The

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 24

Dockside Group contends that the Falaheen Group has failed to plead the predicate acts with sufficient specificity.

"A violation of [RICO] requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 167 (3d Cir. 2013)(internal quotations omitted).

> A pattern of racketeering activity is established by showing that the defendants engaged in at least two predicate acts within ten years of each other. Racketeering activity is defined in RICO to mean 'any act or threat involving' specified state-law crimes, any 'act' indictable under specified federal statutes, and certain federal offenses. The predicate acts of racketeering may include, inter alia, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. As relevant here, mail or wire fraud consists of: (1) a scheme to defraud; (2) use of the mails [or wires] to further that scheme; and (3) fraudulent intent. [N]o defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern.

*Id.* at 168 (internal citations and quotations omitted).

"[W]here the plaintiff presents a fraud-based RICO claim, he must plead with particularity the circumstances of the alleged fraud." *Mierwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012). That is, such claims must comply with the heightened pleading requirements of Rule 9. *See id.* (establishing the pleading requirements for civil RICO claims and citing to Rule 9.)

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 25

Here, the Falaheen Group alleges that the racketeering activity that the Dockside Group participated in for RICO purposes was "multiple instances of mail fraud and wire fraud in violation of 18 U.S.C.[] §§ 1341 and 1343." As such, its pleading under RICO must comply with Rule 9, and all facts amounting to fraud must be pled with particularity. *See id.*; Fed. R. Civ. P. 9. Under this heightened pleading standard, the Complaint is woefully deficient.

Though the facts that are common to all counts set forth a number of statements that the Falaheen Group may be using as the basis for the RICO claim,[3] the dates are not given for those statements, the speakers are not given, and, most importantly of all for allegations of mail or wire fraud, the means by which those statements were communicated are not discussed. It is thus not clear that a wire or the mail was used in communicating these statements. With no indication that the mail or a wire was used to commit fraud, the allegations of mail and wire fraud as predicate acts for the RICO count cannot stand. *See Amos*, 509 F. App'x at 168. The Falaheen Group's Complaint does not allege any of the other predicate acts for a RICO violation.

---

[3] This is unclear, however, because which statements constituted fraud under RICO are not identified in the RICO claim portion of the Complaint.

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 26

In *Fair Wind Sailing, Inc. v. Dempster*, Civ. No. 2011-55, 2013 WL 1091310 (D.V.I. March 15, 2013)(slip op.), this Court was faced with a Complaint that was similarly deficient. As is the case here, several of the necessary elements of the asserted causes of action were not plead with the sort of particularity necessary to meet the minimum pleading requirements.[4] Upon finding that the Complaint was thus deficient, the Court dismissed those counts which were not adequately pled and gave Fair Wind Sailing, Inc. an opportunity to amend by a date certain. The Third Circuit affirmed the dismissal. *See Fair Wind Sailing, Inc. v. Dempster*, --- F.3d ----, 2014 WL 4358471 (3d Cir. Sept. 4, 2014).  As the Complaint in this matter also falls short of the pleading requirements, the Court finds that similar treatment is warranted here.

## IV. <u>CONCLUSION</u>

It is evident that as the Complaint currently stands, the two federal claims are deficient.  Where a claim is subject to dismissal, district courts are instructed to provide the plaintiff with leave to amend even if the plaintiff has not

---

[4] For example, Fair Wind Sailing, Inc. failed to plead any distinctive trade dress in its trademark claim, beyond a bare recitation of the legal elements of a trademark claim. Fair Wind Sailing, Inc. also failed to allege what type of enrichment Demster and the Virgin Islands Sailing School benefitted from, instead relying on a bare assertion that Dempster and the Virgin Islands Sailing School were "enriched." *Fair Wind Sailing, Inc. v. Dempster*, Civ. No. 2011-55, 2013 WL 1091310, at *4, *7 (D.V.I. March 15, 2013)(slip op.)

*Abdel-Rahman et al. v. Abdallah et al.*
Civil No. 2013-102
Memorandum Opinion and Order
Page 27

requested such leave. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The only exception to this general rule is where the district court finds that amendment would be inequitable or futile. *See id.* The Court does not find that amendment would be futile or inequitable here.[5]

The premises considered, it is hereby

**ORDERED** that Count One of the Complaint in its entirety is **DISMISSED without prejudice**; it is further

**ORDERED** that the RICO portion of Count Two of the Complaint is **DISMISSED without prejudice**; and it is further

**ORDERED** that the plaintiffs shall, to the extent they wish to do so, amend Counts One and Two of their Complaint no later than 3:00 PM on September 30, 2014**.**

S\_____
            **Curtis V. Gómez**
            **District Judge**

---

[5] As the Court will allow the plaintiffs leave to amend, the Court refrains from ruling on the defendants' motions to dismiss for lack of subject-matter jurisdiction at this time. Indeed, given the plaintiffs' failure to state a claim, currently there are no federal claims before the Court.